**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**OLIN CORPORATION, et al., Appellees.**

No. 14149.

Court of Appeals of Texas, Austin.

April 3, 1985.

Rehearing Denied May 1, 1985.

Jim Mattox, Atty. Gen., Harold G. Kennedy, Asst. Atty. Gen., Austin, for appellant.

Frank Douglass, Scott, Douglass & Luton, Austin, for appellees.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

This case arises out of an October 21, 1983, order of the Railroad Commission requiring appellees, Olin Corporation and Tenexplo Corporation, to plug a gas well in Galveston County. Appellees appealed from this order to the district court of Travis County, which rendered judgment that the Railroad Commission lacked authority to order appellees to plug the well, and thus, that the order was void as to the appellees. We will reverse the judgment of the district court.

Initially, there were four working interest holders in the well which the Commission ordered plugged. One party withdrew from the operation, which left Beane and Company, Tenexplo Corporation, and Olin Corporation holding the entire working interest in the well. In the fall of 1981, these working interest holders entered into and signed A.A.P.L. Form 610–1977 Model Form Operating agreements with Ca-Tex Petroleum, Inc. as operator and with each of the three working interest holders as nonoperators. These operating agreements contained a provision allowing the working interest holders to go "nonconsent" to reworking of the well. The pertinent part of the nonconsent provision provides that:

> Upon commencement of operations for drilling, reworking, deeping, or plugging back of any well by Consenting Parties in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties, and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting Parties' interest in the *well* and share of production therefrom until (the well has produced to pay 100% of the costs plus a certain % of costs as a penalty).

Sometime before the Commission ordered the well plugged, appellees had chosen to go "nonconsent" under this provision. After the appellees went nonconsent Ca-Tex, the operator, reworked the well. The well was eventually closed down by Ca-Tex. Consequently, the Commission was compelled to maintain the well after it began to "blow out." The Commission held a hearing and issued an interim order declaring that the appellees were jointly and severally liable to control and plug the well. Appellees subsequently brought suit seeking a declaratory judgment regarding interpretation of the Commission's rules and the validity of the order. After the appellees filed suit, the Commission issued its final order which conformed with the interim order. Because appellees had gone "nonconsent" before the Commission ordered them to plug the well, the trial court ruled that the Commission's order was without authority and, thus, void.

On appeal, the Railroad Commission raises ten points of error. The Commission's first four points assert that the trial court erred in its finding that the Commission lacked authority to order appellees to plug the well. Disposition of these points requires that this Court construe Chapter 89 of the Texas Natural Resources Code.

Texas Nat.Res.Code Ann. § 89.042 (Supp.1985) reads:

(a) If the Commission finds that the well was not properly plugged, it shall order the operator to plug the well according to the rules of the Commission in effect at the time the order is issued.

(b) If the operator cannot be found or is no longer in existence or has no assets with which to properly plug the well, the Commission shall order the nonoperator to plug the well according to the rules of the Commission in effect at the time the order is issued.

Section 89.042, therefore, specifically authorizes the Commission to order certain operators and nonoperators to plug a well. Appellants never asserted that appellees were operators of the well. "Nonoperator" is defined in Tex.Nat.Res.Code Ann. § 89.-002(a)(3) as "a person who owns a working interest in a well at the time the well is about to be abandoned or ceases operation and is not an operator as defined in ... this Subsection." Section 89.002(b) goes on to state, "The terms operator and nonoperator as defined in this section do not mean a royalty interest owner or an overriding royalty interest owner." Our initial inquiry is twofold: first, whether a carried interest is sufficient as a divestiture of title to remove appellees from the definition of "nonoperators," and second, whether § 89.002(b) of the Natural Resources Code exempts only royalty and overriding royalty interest owners from plugging.

As stated above, appellees had gone "nonconsent" at the time the Commission ordered the well plugged. There is not an abundance of authority for determining what interest nonconsenting working interest holders own. Both appellant's and appellees' briefs, however, characterize such interest as a carried interest. Furthermore, both briefs state that it is a so-called "Manahan-type" carried interest. We agree that the interest owned by appellees when they went "nonconsent" was a Manahan-type carried interest. Williams and Meyers Treatise at § 424.1 states:

In the Manahan type carried interest, the carried party [i.e., Appellees] has a *future interest* in a portion of the working interest which is so limited as to become possessory after the carrying party has recovered certain specified costs during the payout period ... [the carried party retains] a *reversionary interest* in part of the working interest, which reversion occurs when the carrying party has recovered the specified costs during the payout period. (emphasis added)

Appellees contend that the nonconsent provision in the operating agreements provides that during the nonconsent period, the working interest of appellees was transferred to Beane and Company. Thus, appellees argue that they were not working interest owners at the time the well was to be plugged and, therefore, are not nonoperators and cannot be liable on the Commission's plugging order.

It appears that the appellees retained a future interest in a portion of the working interest at the time the Commission ordered them to plug the well. However, the critical inquiry is whether appellees were still nonoperators under § 89.002. Determining this question will involve the following rules of statutory construction.

■■■ A cardinal rule in statutory interpretation is that a court must determine the intent of the Legislature and must construe the statute so as to give effect to that intent. *Knight v. International Harvester Credit Corporation,* 627 S.W.2d 382 (Tex.1982); *State v. Terrel,* 588 S.W.2d 784 (Tex.1979); *Pan American Bank of Brownsville v. Nowland,* 650 S.W.2d 879 (Tex.App.1983, writ ref'd n.r.e.). The intent of the Legislature should be ascertained primarily from the language employed in the statute. *Duval Corporation v. Sadler,* 407 S.W.2d 493 (Tex.1966); *Matrix Inc. v. Provident American Insurance Co.,* 658 S.W.2d 665 (Tex.App.1983, no writ). In determining such intent, the court must analyze the purpose of the legislation, the end to be attained, and the evil to be remedied. *Flowers v. Dempsey-Tegeler & Co., Inc.,* 472 S.W.2d 112 (Tex. 1971); *Calvert v. Kadane,* 427 S.W.2d 605 (Tex.1968).

Even a cursory analysis of Chapter 89 of the Natural Resources Code indicates a legislative intent to remedy the dangers inherent in leaving abandoned wells unplugged. *See,* Tex.Nat.Res.Code Ann. § 89.001 (1978). It is the protection of the public interest that furnishes the police power involved herein. *Id.* The Commission has the authority to determine whether a well has been properly plugged. Tex. Nat.Res.Code Ann. § 89.041 (1978). The Commission in the instant case found that the well had not been properly plugged. This finding was not challenged on appeal. Upon such a finding, the Commission may order operators and their nonoperators to plug the well. Tex.Nat.Res.Code Ann. § 89.042 (Supp.1985). The Commission found that the operator in this case lacked the assets to properly plug the well. "Nonoperators" may be ordered to plug only if the operator cannot be found or is no longer in existence or has no assets with which to properly plug the well. Tex.Nat.Res. Code Ann. § 89.042(b) (Supp.1985). Additionally, the Legislature provided that the Commission itself may plug the well as a last resort. Tex.Nat.Res.Code Ann. § 89.- 043 (Supp.1985). The Legislature has established a clear preference not to have the State plug abandoned wells. We must determine, however, if the Legislature intended the appellees in the instant case to be required to plug the well in question.

■ Initially, we remark that the retention of a future interest does not logically amount to an irrevocable divestiture of title. The appellees retained some property interest in their working interest. We must go further, however, to resolve the dispute before us. As previously stated, § 89.002(b) exempts royalty interests and overriding interest owners from the terms "operator" and "non-operator." When there are specific exceptions in a statutory definition, no other exceptions are to be presumed. *Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d 303 (Tex.1978); *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597 (1957); *Royer v. Ritter,* 531 S.W.2d 448 (Tex.Civ.App.1975, writ ref'd n.r.e.). Moreover, the language in a statute is presumed to be selected and used with care. Likewise, every word or phrase of a statute is presumed to be intentionally used with meaning and purpose. *Nichols v. William A. Taylor, Inc.,* 662 S.W.2d 396 (Tex.App. 1983, no writ). We hold that because appellees owned a reversionary interest in part of the working interest at the time the Commission ordered the well plugged, and because § 89.002(b) exempts only royalty and overriding royalty interest owners from plugging, and does not exempt carried interest owners, the Legislature intended Chapter 89 to authorize the Commission to order appellees to plug the well. The appellees could have avoided liability for plugging the well had they permanently assigned all their interest they had in the well. *See, Fain McGaha Oil Corporation v. Murko Oil & Royalty Co.,* 128 Tex. 646, 101 S.W.2d 547 (1937). Instead, they still retained a part of the working interest. Thus, they are liable on the Commission's plugging order.

Due to our disposition of this case, we find it unnecessary to decide appellant's points of error three through eight. In points of error nine and ten, appellant asserts that the trial court erred in not mandatorily enjoining appellees to plug the well, and in not fixing civil penalties for appellees' failure to comply with the plugging order. The fact that the Commission has already plugged the well renders moot the issue of requiring appellees to plug the same well. The trial court, however, granted a take nothing judgment on the Commission's counterclaim. Because the Commission had the authority to order appellees to plug the well, we hold that the Commission should have been permitted to proceed with its counterclaim to determine the issue of damages.

The judgment of the trial court is reversed and the case remanded for further proceedings not inconsistent with this opinion.