Office of the Attorney General · State of Texas



October 4, 2002

The Honorable Ron Wilson
Chair, Committee on Licensing and
Administrative Procedures
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0559

Re:   Whether the Texas Department of
Insurance is authorized to examine certain
nonprofit health corporations under Insurance
Code articles 20A.17 and 20A.18C
(RQ-0534-JC)

Dear Representative Wilson:

You ask a number of questions about the authority of the Texas Department of Insurance (the "Department") under the Health Maintenance Organization Act, chapter 20A of the Texas Insurance Code, to examine nonprofit health corporations certified by the Texas State Board of Medical Examiners.[1] Article 20A.17 of the Insurance Code authorizes the Department to examine health maintenance organizations. *See* TEX. INS. CODE ANN. art. 20A.17 (Vernon Supp. 2002). In connection with the examination of a health maintenance organization, the Department is authorized to examine records of a nonprofit health corporation, with which the health maintenance organization has a contract, that are "relevant to its relationship with the health maintenance organization." *Id.* art. 20A.17(b)(1). The Department's authority to examine a nonprofit health corporation under article 20A.17 depends only on whether the health maintenance organization has a contract with the nonprofit health corporation and does not depend on whether the nonprofit health corporation provides only medical care or is paid on a prospective basis under the contract. The Department's authority to examine medical, hospital, and health records is limited to examinations of health maintenance organizations concerning the quality of health care services. *See id.* art. 20A.17(a), (b)(3).

You also ask about article 20A.18C of the Insurance Code, which regulates health maintenance organizations' delegation of regulated functions. Under article 20A.18C, as enacted in 1999, the Department's authority with respect to a delegated network is dependent on the health maintenance organization first providing the delegated network with written notice and an opportunity to respond and then requesting the Department to intervene. The Department's intervention authority is not limited to the issues raised in the health maintenance organization's written notice. A nonprofit health corporation may fall within the statutory definition of a "delegated

---

[1]*See* Letter from Honorable Ron Wilson, Chair, Committee on Licensing and Administrative Procedures, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Apr. 3, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

network" and may be subject to examination by the Department as a delegated network if the health maintenance organization requests the Department to intervene. This examination could include the nonprofit health corporation's financial condition.

## I. Background

We begin with a brief review of several key concepts. You ask about the Department's authority to examine the records of "physician organizations," by which you mean nonprofit health corporations certified by the Texas State Board of Medical Examiners. The Board of Medical Examiners regulates physicians and the practice of medicine under the Medical Practice Act, which is now codified in the Texas Occupations Code. *See* TEX. OCC. CODE ANN. §§ 152.001 (board's "power to regulate the practice of medicine"); 153.001(3) (board's authority to adopt rules to "regulate the practice of medicine in this state"); 155.001 (license to practice medicine) (Vernon 2002). The Medical Practice Act defines "practicing medicine" as

> the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:
>
> (A) publicly professes to be a physician or surgeon; or
>
> (B) directly or indirectly charges money or other compensation for those services.

*Id.* § 151.002(a)(13).

The Medical Practice Act also mandates in section 162.001 of the Occupations Code that the Board of Medical Examiners certify nonprofit health corporations that meet certain requirements. *See id.* § 162.001. As Attorney General Opinion JC-0304 explains, the purpose of this provision is to create a limited exception to the general prohibition against the corporate practice of medicine. *See* Tex. Att'y Gen. Op. No. JC-0304 (2000) at 4. While your query refers to these entities as "physician organizations," the Department's rules refer to them as "approved nonprofit health corporations" or "ANHCs." *See* 28 TEX. ADMIN. CODE § 11.2(a)(6) (2002). We use the term "nonprofit health corporation," which is used in both section 162.001 of the Occupations Code and the Health Maintenance Organization Act. *See* TEX. OCC. CODE ANN. § 162.001 (Vernon 2002); TEX. INS. CODE ANN. art. 20A.02(r)(2) (Vernon Supp. 2002).

Section 162.001 of the Occupations Code provides for two types of nonprofit health corporations that the Board of Medical Examiners must certify. The first type:

> (1) is a nonprofit corporation under the Texas Non-Profit Corporation Act organized to:

>    (A) conduct scientific research and research projects in the public interest in the field of medical science, medical economics, public health, sociology, or a related area;
>
>    (B) support medical education in medical schools through grants and scholarships;
>
>    (C) improve and develop the capabilities of individuals and institutions studying, teaching, and practicing medicine;
>
>    (D) deliver health care to the public; or
>
>    (E) instruct the general public in medical science, public health, and hygiene and provide related instruction useful to individuals and beneficial to the community;
>
>    (2) is organized and incorporated solely by persons licensed by the board; and
>
>    (3) has as its directors and trustees persons who are:
>
>    (A) licensed by the board; and
>
>    (B) actively engaged in the practice of medicine.

TEX. OCC. CODE ANN. § 162.001(b) (Vernon 2002). The second type is

> a health organization to contract with or employ physicians licensed by the board if the organization:
>
>    (1) is a nonprofit corporation under the Texas Non-Profit Corporation Act . . . and Section 501(c)(3), Internal Revenue Code of 1986 (26 U.S.C. Sec. 501(c)(3)); and
>
>    (2) is organized and operated as:
>
>    (A) a migrant, community, or homeless health center under the authority of and in compliance with 42 U.S.C. Section 254b or 254c; or
>
>    (B) a federally qualified health center under 42 U.S.C. Section 1396d(*l*)(2)(B).

*Id.* § 162.001(c).

The Board of Medical Examiners may refuse to certify or may revoke a certification "[o]n a determination that a health organization is established, organized, or operated in violation of or with the intent to violate this subtitle." *Id.* § 162.003. It may also discipline individual physicians involved in a nonprofit health corporation with respect to the practice of medicine. However, the Board of Medical Examiners lacks any other authority with respect to these entities.[2]

Your questions focus on the examination of nonprofit health corporations under the Health Maintenance Organization Act, chapter 20A of the Insurance Code (the "Act" or "chapter 20A"). As a general matter, the Act provides for the regulation of health maintenance organizations. For purposes of the Act, "health maintenance organization" is defined as "any person who arranges for or provides a health care plan, a limited health care service plan, or a single health care service plan to enrollees on a prepaid basis." TEX. INS. CODE ANN. art. 20A.02(n) (Vernon Supp. 2002); *see also id.* art. 20A.06 (powers of health maintenance organization). Health maintenance organizations must obtain a certificate of authority from the Department and are subject to regulation by the Department. *See, e.g., id.* arts. 20A.03-.06, 20A.09.

The Act is not applicable to physicians "engaged in the delivery of care that is within the definition of medical care." *Id.* art. 20A.26(f)(1)(A). Under the Act, the term "physician" is defined to include nonprofit health corporations certified by the Board of Medical Examiners under the Medical Practice Act. Article 20A.02 defines the term "physician" for purposes of the Act as:

> (1) an individual licensed to practice medicine in this state;
>
> (2) a professional association organized under the Texas Professional Association Act (Article 1528f, Vernon's Texas Civil Statutes) or a *nonprofit health corporation certified under Section 5.01, Medical Practice Act (Article 4495b, Vernon's Texas Civil Statutes)* [now Occupations Code section 162.001];
>
> (3) a medical school or medical and dental unit, as described by Section 61.003, 61.501, or 74.601, Education Code, that employs or contracts with physicians to teach or provide medical services or employs physicians and contracts with physicians in a practice plan; or
>
> (4) another person wholly owned by physicians.

*Id.* art. 20A.02(r) (emphasis added). Under the Act, "medical care" means "furnishing those services defined as practicing medicine under [the] Medical Practice Act." *Id.* art. 20A.02(p); *see also* TEX. OCC. CODE ANN. § 151.002(a)(13) (Vernon 2002) (Medical Practice Act provision defining "practicing medicine").

---

[2]*See* Brief from Michele Shackelford, General Counsel, Texas State Board of Medical Examiners, to Susan Denmon Gusky, Chair, Opinion Committee, Office of Attorney General, at 2 (June 4, 2002) (on file with Opinion Committee).

The Act defines the terms "provider" and "health care" to exclude physicians and medical care. A "provider" is:

> (1) any person *other than a physician*, including a licensed doctor of chiropractic, registered nurse, pharmacist, optometrist, registered optician, acupuncturist, pharmacy, hospital, or other institution or organization or person that is licensed or otherwise authorized to provide a health care service in this state;
>
> (2) a person who is wholly owned or controlled by a provider or by a group of providers who are licensed to provide the same health care service; or
>
> (3) a person who is wholly owned or controlled by one or more hospitals and physicians, including a physician-hospital organization.

TEX. INS. CODE ANN. art. 20A.02(t) (Vernon Supp. 2002) (emphasis added); *see also id.* art. 20A.02(q) (defining "person"). "Health care" means "prevention, maintenance, rehabilitation, pharmaceutical, and chiropractic services provided by qualified persons *other than medical care.*" *Id.* art. 20A.02(k) (emphasis added) (text of subsection (k) as amended by Act of June 1, 1997, 75th Leg., R.S., ch. 1026, § 3, 1997 Tex. Gen. Laws 3804, 3807). On the other hand, the term "[h]ealth care services" includes medical services:

> any services, including the furnishing to any individual of pharmaceutical services, *medical*, chiropractic, or dental care, or hospitalization or incident to the furnishing of such services, care, or hospitalization, as well as the furnishing to any person of any and all other services for the purpose of preventing, alleviating, curing or healing human illness or injury a limited health care service plan, or a single health care service plan.

*Id.* art. 20A.02(m) (emphasis added).

You ask about nonprofit health corporations that provide medical as opposed to other kinds of health care. To the extent nonprofit health corporations are engaged in the delivery of medical care, the Health Maintenance Organization Act does not apply to them, *see id.* art. 20A.26(f)(1)(A), and they are not required to obtain a certificate of authority under the Act, *see id.* art. 20A.26(f)(2) (requiring physician "that employs or enters into a contractual arrangement with a provider or group of providers to furnish basic, limited, or single health care services" to obtain a certificate of authority, with certain exceptions). We also note that, under article 21.52F of the Insurance Code, a nonprofit health corporation may arrange for or provide a "health care" plan to enrollees on a prepaid basis only if the corporation obtains and maintains a special certificate of authority issued by the Department under that article. *See id.* art. 21.52F, § 2(a). A nonprofit health corporation may, however, "arrange for or provide health care services on a risk-sharing or capitated risk arrangement"

on behalf of a health maintenance organization without obtaining a certificate of authority under either article 21.52F or the Act. *See id.* art. 21.52F, § 2(c). A Department rule provides that a nonprofit health corporation "that contracts to arrange for or provide only medical care" as defined in the Act is not required to obtain a certificate of authority under article 21.52F. *See* 28 TEX. ADMIN. CODE § 11.1702(d) (2002); *see also id.* § 11.1604 (imposing certain requirements on primary health maintenance organization that "enters into a contract with an ANHC in which the ANHC agrees to arrange for or provide health care services, *other than medical care or services ancillary to the practice of medicine*") (emphasis added). Thus the nonprofit health corporations about which you inquire are not required to obtain a certificate of authority under either the Act or article 21.52F. They are, however, "physicians" and are subject to some regulation under the Act. *See* TEX. INS. CODE ANN. art. 20A.02(r) (Vernon Supp. 2002) (defining "physician").

## II. The Department's Authority under Article 20A.17

With these concepts in mind, we turn to the authority of the Department to examine the records of a nonprofit health corporation under article 20A.17 of the Act. You ask:

> Does the Commissioner of Insurance have authority under Articles 1.15, 20A.17 or 20A.18C of the Texas Insurance Code to conduct a regulatory examination of a physician organization that, under a contract with a health maintenance organization, provides only medical services that the organization's physicians are professionally licensed to provide in exchange for a predetermined payment on a prospective basis?

Request Letter, *supra* note 1, at 5. As we will explain below, while article 1.15 does not apply to physicians or nonprofit health corporations, article 20A.17 authorizes the Department in connection with the examination a health maintenance organization to examine the records of a physician or nonprofit health corporation with which the health maintenance organization has a contract. We examine the Department's authority under article 20A.18C in conjunction with your other questions about that provision. *See* Part III *infra.*

Article 1.15 does not apply to physicians or nonprofit health corporations certified by the Board of Medical Examiners and does not authorize the Department to examine them. Article 1.15 of the Insurance Code speaks in terms of the Department's examination of carriers. The Department may apply article 1.15 to health maintenance organizations. *See* TEX. INS. CODE ANN. art. 20A.17(c) (Vernon Supp. 2002) ("Articles 1.04A, 1.15, 1.16, and 1.19, as amended, of the Insurance Code shall be construed to apply to health maintenance organizations, except to the extent that the commissioner determines that the nature of the examination of a health maintenance organization renders such clearly inappropriate.").

By contrast, article 20A.17, a provision of the Health Maintenance Organization Act, expressly authorizes the Department to examine the records of a physician or provider with whom a health maintenance organization has a contract in connection with the examination of the health

maintenance organization. Article 20A.17 requires the Commissioner of Insurance to examine "the quality of health care services" and "the affairs" of a health maintenance organization "not less frequently than once every three years." *Id.* art. 20A.17(a) ("The commissioner may make an examination concerning the quality of health care services and of the affairs of any applicant for a certificate of authority or any health maintenance organization as often as the commissioner deems necessary, but not less frequently than once every three years."). Subsection (b)(1) of article 20A.17 expressly provides that this examination may include an examination of the books and records of a physician:

> (b)(1) Every health maintenance organization shall make its books and records relating to its operation available for such examinations and in every way facilitate the examinations. *Every physician and provider with whom a health maintenance organization has a contract, agreement, or other arrangement need only make available for examination that portion of its books and records relevant to its relationship with the health maintenance organization.*

*Id.* art. 20A.17(b)(1) (emphasis added). Under subsection (b)(2), the health maintenance organization must provide the Department with copies of its contracts with physicians:

> (2) A copy of any contract, agreement, or other arrangement between a health maintenance organization and a physician or provider shall be provided to the commissioner by the health maintenance organization on the request of the commissioner. Such documentation provided to the commissioner under this subsection shall be deemed confidential and not subject to the open records law, Chapter 552, Government Code.

*Id.* art. 20A.17(b)(2). Subsection (b)(5) permits the Department to obtain any other relevant records directly from physicians:

> (5) For the purpose of examinations, the commissioner may administer oaths to and examine the officers and agents of the health maintenance organization and *the principals of such physicians* and providers *concerning their business*.

*Id.* art. 20A.17(b)(5) (emphasis added). Again, for purposes of the Act, the term "physician" includes both individual physicians and nonprofit health corporations certified by the Board of Medical Examiners. *See id.* art. 20A.02(r). Thus, the authority to examine physician records in article 20A.17(b)(1), (2), (5) includes the authority to examine the records of a nonprofit health corporation.

As noted above, the Department is specifically authorized under article 20A.17 to examine a health maintenance organization "concerning the quality of health care services" as well as its "affairs." *Id.* art. 20A.17(a). Subsection (b)(3) limits access to medical information about specific enrollees "as is necessary for an ongoing quality of health assurance program" and provides for the confidentiality of such information:

> (3) Medical, hospital, and health records of enrollees and records of physicians and providers providing service under independent contract with a health maintenance organization shall only be subject to such examination as is necessary for an ongoing quality of health assurance program concerning health care procedures and outcome in accordance with an approved plan as provided for in this Act. Said plan shall provide for adequate protection of confidentiality of medical information and shall only be disclosed in accordance with applicable law and this Act and shall only be subject to subpoena upon a showing of good cause.

*Id.* art. 20A.17(b)(3). This provision limits the Department's authority to examine medical, hospital and health records to examinations of health maintenance organizations concerning the quality of health care services. This limitation applies to medical, hospital, and health records in the possession of health maintenance organizations, providers, and physicians, and therefore limits the Department's authority to examine such records in the possession of physicians. However, as explained below, subsection (b)(3) does not limit the Department's authority under subsections (b)(1), (2) and (5) of article 20A.17 to examine other physician records.

It has been suggested that subsection (b)(3) limits the authority of the Department to examine the records of physicians under article 20A.17 to medical records and only for the purpose of examining the quality of care. *See* Request Letter, *supra* note 1, at 3. We disagree. Subsections (b)(1)-(2) provide that the Department may examine the "contract, agreement, or other arrangement" between a physician and the health maintenance organization and a physician's "books and records relevant to its relationship with the health maintenance organization." TEX. INS. CODE ANN. art. 20A.17(b)(1)-(2) (Vernon Supp. 2002). Furthermore, subsection (b)(5) authorizes the Department to examine the principals of physicians "concerning their *business*." *Id.* art. 20A.17(b)(5) (emphasis added). These provisions clearly authorize the Department to examine physician records other than medical, hospital, and health records – records, such as contracts and books, that are unrelated to quality of patient care.

The legislative history of article 20A.17 supports our conclusion that subsection (b)(3) does not preclude the Department from examining physician records other than medical, hospital, and health records. As enacted in 1975, article 20A.17 vested the authority to examine health maintenance organizations' "affairs" in the Department and their "quality of health care services" in the State Board of Health. *See* Act of May 2, 1975, 64th Leg., R.S., ch. 214, § 17, 1975 Tex. Gen. Laws 514, 523-24 (enacting Texas Insurance Code article 20A.17(a), (b)). Although the Board of Health was authorized to examine providers as well as health maintenance organizations, neither

entity had direct authority to examine physicians. *See id.* A physician was generally required to make available "that portion of its books and records relevant to its relationship with the health maintenance organization" for examination by either entity, *id.* (enacting Texas Insurance Code article 20A.17(c)(1)), while "[m]edical, hospital, and health records of enrollees" were subject to examination only as "necessary for an ongoing quality of health assurance program concerning health care procedures and outcome," *id.* (enacting Texas Insurance Code article 20A.17(c)(2)). Both the Department and the Board were authorized to examine the principals of physicians "concerning their business," *id.* (enacting Texas Insurance Code article 20A.17(c)).

In 1989, the legislature amended the section describing the authority of the Board of Health, deleting certain language, as follows:

> (b) The board may make an examination concerning the quality of health care services of any health maintenance organization [~~and providers with whom such organization has contracts, agreements, or other arrangements~~] as often as it deems it necessary, but not less frequently than once every three years.

Act of May 28, 1989, 71st Leg., R.S., ch. 284, § 2, 1989 Tex. Gen. Laws 1238, 1239. The legislature also amended a section describing the general examination authority of both the Board of Health and the Department:

> (c)(1) Every health maintenance organization shall make its books and records relating to its operation available for such examinations. . . . Every physician and provider *with whom a health maintenance organization has a contract, agreement, or other arrangement* [~~so examined~~] need only make available for examination that portion of its books and records relevant to its relationship with the health maintenance organization.

*Id.* § 3, 1989 Tex. Gen. Laws at 1239. These amendments took away the Board of Health's direct authority to examine providers and established that both the Department's and the Board of Health's authority to examine physician and provider records extended only to those physicians and providers "with whom a health maintenance organization has a contract, agreement, or other arrangement." *See id.*

In 1997, the legislature transferred the authority to examine quality of health care services from the Board of Health to the Department. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1026, §§ 2, 17, 1997 Tex. Gen. Laws 3804, 3805-06, 3823-24 (enacting Senate Bill 385). The same bill also renumbered the article's subsections and added two new subsections. It added subsection (b)(2), which requires a health maintenance organization to provide physician and provider contracts to the Department and makes those records confidential under the Public Information Act. It also added subsection (b)(4), which authorizes the Department to "examine and use the records of a health maintenance organization, including records of a quality of care assurance program and records of

a medical peer review committee . . . as necessary to carry out the purposes of this Act, including an enforcement action under Section 20 of this Act," and provides that "[t]hat information is confidential and privileged and is not subject to the [Public Information Act], or to subpoena except as necessary for the commissioner to enforce this Act." *Id.* § 17(4), 1997 Tex. Gen. Laws at 3823-24.

The 1997 amendments transferred the Board of Health's examination authority to the Department without changing that authority. Furthermore, the amendments did not limit the Department's prior authority to examine the affairs of a health maintenance organization and to examine the records of a physician relevant to his or her relationship with the health maintenance organization in connection with the examination of a health maintenance organization. *See* SENATE RESEARCH CTR., BILL ANALYSIS, Tex. S.B. 385, 75th Leg., R.S. (1997) ("During the 74th Interim, the Senate Interim Committee on Managed Care and Consumer Protections was charged with reviewing Texas statutes and agency regulations to ensure the availability and effectiveness of important consumer safeguards. This legislation establishes the transfer of quality of care oversight functions from the Texas Department of Health . . . to the Texas Department of Insurance."). Thus, the Department's authority to examine physician records under article 20A.17 is not limited to medical, hospital, and health records or to "HMO quality of care concerns." Request Letter, *supra* note 1, at 3.

You ask in particular about the Department's authority to examine "a physician organization that, under a contract with a health maintenance organization, provides only medical services that the organization's physicians are professionally licensed to provide in exchange for a predetermined payment on a prospective basis." *Id.* at 5. You also assert that the Department's authority under article 20A.17 does not "include authority to examine into the processing, adjudication and payment of provider claims for HMO-covered services provided to HMO members." *Id.* at 3.

Under article 20A.17(b)(1), the Department's authority to examine a physician (including a nonprofit health corporation) does not depend on whether the physician provides only medical services or is paid on a prospective basis. Rather, the scope of the Department's examination authority under article 20A.17(b)(1) depends upon the physician or nonprofit health corporation's relationship with the health maintenance organization. The Department's authority extends to "[e]very physician . . . with whom a health maintenance organization has a contract, agreement, or other arrangement" and is limited in scope to "that portion of [the physician's] books and records relevant to [the physician's] relationship with the health maintenance organization." TEX. INS. CODE ANN. art. 20A.17(b)(1) (Vernon Supp. 2002). This authority would extend to a physician's records relating to "the processing, adjudication and payment of provider claims for HMO-covered services provided to HMO members," Request Letter, *supra* note 1, at 3, to the extent those records are relevant to the physician's relationship with the health maintenance organization.

The Department's authority to examine the records of physicians and nonprofit health corporations under article 20A.17(b)(1) is not limited by article 20A.26. That article, entitled

"Statutory Construction in Relationship to Other Laws," provides a limited exemption for physicians and other providers in subsection (f):

> (1) *This Act shall not be applicable to*:
>
> > (A) *any physician, so long as that physician is engaged in the delivery of care that is within the definition of medical care*; or
> >
> > (B) any provider that is engaged in the delivery of health care services other than medical care as part of a health maintenance organization delivery network.

TEX. INS. CODE ANN. art. 20A.26(f)(1) (Vernon Supp. 2002) (emphasis added); *see also id.* art. 20A.29 (Vernon 1981) ("This Act shall not be construed to . . . (b) authorize any person to regulate, interfere, or intervene in any manner in the practice of medicine or any healing art.").

Other provisions in subsection (f) clarify when a physician must obtain a certificate of authority under the Act and permit physicians and providers to enter into various types of contractual arrangements. For example, subsection (f)(2) provides:

> (2) Except as provided by Section 6(a)(3) of this Act or Subdivision (5) of this subsection, any physician or provider that employs or enters into a contractual arrangement with a provider or group of providers to furnish basic, limited, or single health care services as defined in Section 2 of this Act is subject to the provisions of this Act and shall be required to obtain a certificate of authority from the commissioner.

*Id.* art. 20A.26(f)(2) (Vernon Supp. 2002). Section 6 of the Act, article 20A.06, describes various powers of health maintenance organizations, including in (a)(3) "the furnishing of or arranging for medical care services" through various types of arrangements. *See id.* art. 20A.06(a)(3). Subdivision (5) of subsection (f) provides that

> [t]his Act and the Insurance Code may not be construed to prohibit a physician or provider who is participating in a health maintenance organization delivery network, whether contracting with a health maintenance organization under Section 6(a)(3) of this Act or subcontracting with a physician or provider in the health maintenance organization delivery network, from entering into a contractual arrangement within a health maintenance organization delivery network described under Subdivisions (6)-(9) of this subsection.

*Id.* art. 20A.26(f)(5).   Subsections (f)(6)-(9) in turn permit various types of arrangements.[3] Subsection (f)(4) exempts physicians and providers from "insurance laws, including the group hospital service corporation law" (with certain exceptions) and is not relevant to the status of physicians and providers under chapter 20A, which regulates health maintenance organizations rather than insurers. *See id.* art. 20A.26(f)(4); *see also id.* art. 20A.26(a) (Vernon 1981) (exempting health maintenance organizations from "the insurance law and provisions of the group hospital service corporation laws").

Article 20A.26(f) does not exempt physicians' (including nonprofit health corporations') records from examination under article 20A.17(b)(1). Articles 20A.17 and 20A.26(f) are part of the same Act, and we must construe them to give effect to each. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (Code Construction Act presumption that legislature intends entire statute to be effective). Article 20A.17(b)(1) provides for the examination of health maintenance organizations and authorizes the Department to examine the records of a physician that contracts with a health maintenance organization, but limits the scope of that authority to "that portion of [the physician's] books and records relevant to [the physician's] relationship with the health maintenance organization." TEX. INS. CODE ANN. art. 20A.17(b)(1) (Vernon Supp. 2002). If article 20A.26(f) exempted physicians' records from examination under article 20A.17(b), then the language about physician records in subsection (b)(1), and subsections (b)(2) and (5), would be rendered meaningless. We may not construe article 20A.26(f) so broadly. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) (Texas Supreme Court "will give effect to all the words of a statute and not treat any statutory language as surplusage if possible") (citing *Perkins v. State*, 367 S.W.2d 140 (Tex. 1963)); *R.R. Comm'n v. Olin Corp.*, 690 S.W.2d 628, 631 (Tex. App.–Austin 1985, writ ref'd n.r.e.) ("[E]very word . . . of a statute is presumed to be intentionally used with meaning and purpose."); *see also* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (in enacting a statute, it is presumed that "the entire statute is intended to be effective") (Code Construction Act).

Furthermore, the language of article 20A.26(f)(1)(A) does not require such a broad construction. Article 20A.26(f)(1)(A) provides that the Act does not apply to physicians (which includes nonprofit health corporations) to the extent they are "engaged in the delivery of care that is within the definition of medical care." TEX. INS. CODE ANN. art. 20A.26(f)(1)(A) (Vernon Supp. 2002). Because the term "medical care" means "the diagnosis, treatment, or offer to treat a mental

---

[3]*See* TEX. INS. CODE ANN. art. 20A.26(f)(6) ("A physician may contract to provide medical care or arrange to provide medical care through subcontracts with other physicians. A physician may contract to provide through other providers any services that are ancillary to the practice of medicine, other than hospital or other institutional or inpatient provider services."), (7) ("A provider may contract to provide, or arrange to provide through subcontracts with similarly licensed providers, any health care services that those providers are licensed to provide, other than medical care."), (8) ("A provider may contract to provide, or arrange to provide through subcontracts with other providers, a health care service that the provider is not licensed to provide, other than medical care, if the contracted or subcontracted services constitute less than 15 percent of the total amount of services to be provided by that provider or arranged to be provided for by that provider."), (9) ("A contract or subcontract authorized under Subdivision (6), (7), or (8) of this subsection may provide for compensation based on a fee-for-service arrangement, a risk-sharing arrangement, or a capitated risk arrangement under which a fixed predetermined payment is made in exchange for the provision of, or the arrangement to provide and the guaranty of the provision of, a defined set of covered services to the covered persons for a specified period, regardless of the amount of services actually provided.").

or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions," TEX. OCC. CODE ANN. § 151.002(a)(13) (Vernon 2002); TEX. INS. CODE ANN. art. 20A.02(p) (Vernon Supp. 2002) (defining "medical care" in reference to the Medical Practice Act), article 20A.26(f)(1)(A) exempts physicians, to the extent they are engaged in such activities, from regulation under the Act. *See* TEX. INS. CODE ANN. art. 20A.26(f)(1)(A); *see also id.* art. 20A.29 (Vernon 1981) ("This Act shall not be construed to . . . (b) authorize any person to regulate, interfere, or intervene in any manner *in the practice of medicine* or any healing art.") (emphasis added). Article 20A.26(f)(1)(A) thereby recognizes that individual physicians' delivery of medical care is regulated by the Board of Medical Examiners. However, other activities of physicians are not exempt from regulation under the Act by article 20A.26(f)(1)(A), nor are physician records exempt from examination by that provision. Article 20A.26(f)(1)(A), in providing that the Act does not apply to physicians, does not affect the authority of the Department to examine a health maintenance organization and does not limit the Department's express authority under article 20A.17(b)(1) to examine a physician's records relevant to the physician's relationship with a health maintenance organization.

Nor do other provisions of article 20A.26(f) affect the Department's authority to examine a physician's records. Article 20A.26(f)(2) establishes when a physician must obtain a certificate of authority under the Act, but does not provide an affirmative exemption from regulation. Other provisions of subsection (f) permit physicians to enter into certain kinds of contracts, but do not necessarily exempt physicians from regulation under the Act. Subsection (f)(4) exempts physicians from "insurance laws" and is not relevant to the examination of physicians under chapter 20A. These provisions do not affect the authority of the Department to examine a physician's records under article 20A.17.

Finally, article 21.52F does not affect the extent to which the Department may regulate under the Act nonprofit health corporations that provide only medical care. Article 21.52F requires a nonprofit health corporation to obtain a special certificate of authority if it "arrange[s] for or provide[s] a health care plan to enrollees on a prepaid basis." TEX. INS. CODE ANN. art. 21.52F, § 2(a); *see also id.* art. 21.52F, § 2(c) (nonprofit health corporation may "arrange for or provide health care services on a risk-sharing or capitated risk arrangement" on behalf of a health maintenance organization without obtaining a certificate of authority under the Act or article 21.52F). Article 21.52F expressly provides that it does not "*apply*" to "an activity exempt from regulation under" article 20A.26(f), *id.* art. 21.52F, § 2(b)(3) (emphasis added), and that it "shall not be construed *to alter* the exceptions set out in" article 20A.26(f), *id.* art. 21.52F, § 2(d) (emphasis added). By its terms, article 21.52F does not broaden the scope of the article 20A.26(f) with respect to nonprofit health corporations that provide only medical care. Accordingly, article 21.52F does not affect the authority of the Department to examine a nonprofit health corporation's records under article 20A.17.

### III. The Department's Authority under Article 20A.18C

Next, we address the Department's authority with respect to "delegated networks" under article 20A.18C of the Act. In 2001, the Legislature amended article 20A.18C and specified that

the changes in the law would apply only to a contract entered into or renewed on or after January 1, 2002: "A contract entered into before January 1, 2002, is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose." Act of May 17, 2001, 77th Leg., R.S., ch. 550, § 7, 2001 Tex. Gen. Laws 1041, 1050. As you inform us that the contract at issue dates from before January 1, 2002, and has not been renewed, we address article 20A.18C as it was first enacted in 1999, prior to its amendment in 2001. *See* Act of May 18, 1999, 76th Leg., R.S., ch. 621, 1999 Tex. Gen. Laws 3163. All references in this opinion to article 20A.18C are references to the 1999 enactment.

Article 20A.18C regulates health maintenance organizations' delegation of regulated functions to delegated networks. *See id.* § 2, at 3164-68. A "delegation agreement" is an agreement by which a health maintenance organization "assigns the responsibility for a function regulated under this Act." *Id.* § 1, at 3164 (enacting Texas Insurance Code article 20A.02 (dd)). A "delegated network" is

> an entity, other than a health maintenance organization authorized to do business under this Act or an insurer authorized to do business under Chapter 3, Insurance Code, which: (i) by itself, or through one or more entities, undertakes to arrange for or to provide medical care to an enrollee in exchange for a predetermined payment on a prospective basis; and (ii) performs on behalf of the health maintenance organization, any function regulated by this Act.

*Id.* (enacting Texas Insurance Code article 20A.02 (ee)); *see also id.* (excluding from "'delegated network'. . . an individual physician or a group of employed physicians practicing medicine under one federal tax identification number and whose total claims paid to providers not employed by the group is less than 20 percent of the total collected revenue of the group calculated on a calendar year basis."). A health maintenance organization that enters into a delegation agreement must execute a written agreement with the delegated network and must file the agreement with the Department. *See id.* § 2 (enacting Texas Insurance Code article 20A.18C(a)). The agreement must contain a monitoring plan pursuant to which the health maintenance organization monitors the delegated network's performance of delegated functions. *See id.* (enacting Texas Insurance Code article 20A.18C(a)(1)).

Under article 20A.18C, a health maintenance organization must notify the Department about and request the Department's intervention with respect to problems in the delegated network's performance of delegated functions under certain circumstances. You ask two questions about the Department's authority with respect to delegated networks under article 20A.18C:

> Is an HMO required to provide notice to a delegated network identifying specific deficiencies under a monitoring plan ("Notice of Deficiencies") and an opportunity to respond and cure the specific deficiencies identified by the HMO as a condition precedent to the Department's intervention authority?

> Does the Department have authority to examine delegated networks with respect to matters that have either not been identified in the Notice of Deficiencies, or have been identified but cured by the delegated network, following an HMO's request for intervention by the Department?

Request Letter, *supra* note 1, at 6. As we explain below, the Department's authority under article 20A.18C with respect to a delegated network depends on the health maintenance organization first providing the delegated network with written notice and an opportunity to respond and then requesting the Department to intervene. The Department's intervention authority, once it has been invoked, is not limited to the issues raised in the health maintenance organization's written notice.

First, the Department's authority to intervene under article 20A.18C is triggered by a health maintenance organization's request for intervention. Under article 20A.18C, a health maintenance organization requests intervention after adhering to certain procedural steps. Specifically, a health maintenance organization that receives information through the monitoring plan that indicates that the delegated network "is not operating in accordance with its written agreement" or "is operating in a condition that renders the continuance of its business hazardous to the enrollees" is required to notify the delegated network in writing. *See* Act of May 18, 1999, 76th Leg., R.S., ch. 621, § 2, 1999 Tex. Gen. Laws 3163, 3166 (enacting Texas Insurance Code article 20A.18C(d)). The written notice must notify the delegated network of the findings and request a written explanation of "the delegated network's noncompliance with the written agreement" or "the existence of the condition that renders the continuance of the delegated network's business hazardous to the enrollees." *Id.* The delegated network must respond to the written request for an explanation in writing "not later than the 30th day after the date the request is received." *Id.* (enacting Texas Insurance Code article 20A.18C(e)). The health maintenance organization "shall cooperate" with the delegated network to correct the delegated network's failure "to comply with the regulatory requirements of the department" relating to delegated functions or matters "necessary for the health maintenance organization to ensure compliance with statutory or regulatory requirements." *Id.* at 3166-67 (enacting Texas Insurance Code article 20A.18C(f)).

The health maintenance organization must notify the Department and request intervention if the health maintenance organization does not receive a timely response from the delegated network or if the health maintenance organization and the delegated network are unable to reach an agreement as to whether the delegated network is complying with the written agreement or has corrected any problem regarding a practice that is hazardous to an enrollee of the health maintenance organization. *See id.* at 3167 (enacting Texas Insurance Code article 20A.18C(g)). After it receives a request for intervention, the Department may take any of a number of actions. *See id.* (enacting Texas Insurance Code article 20A.18C(h)). This authority clearly depends on the Department's receipt of a request for intervention. *See id.* ("*On receipt of a request for intervention* under Subsection (g) of this section, the department may . . . .") (emphasis added).

With respect to your second question, once the Department has received a request for intervention and is authorized to intervene, its authority is not limited to the issues raised in the

health maintenance organization's request for a written explanation. On receipt of a request for intervention, the Department may:

> (1) request financial and operational documents from the delegated network to further investigate deficiencies indicated by the monitoring plan;
>
> (2) conduct an on-site audit of the delegated network *if the department determines that the delegated network is not complying with the monitoring standards required under Subsection (a)(1) of* this section; or
>
> (3) *notwithstanding any other provisions, upon violation of a monitoring plan,* suspend or revoke the third party administrator license or utilization review agent license of:
>
> > (A) the delegated network; or
> >
> > (B) a third party with which the delegated network has contracted.

*Id.* (emphasis added). The Department's powers permit it to ensure compliance with the monitoring plan as a general matter and are not limited to the issues raised in the health maintenance organization's request for a written explanation.

The Department must report to the delegated network and the health maintenance organization the results of its review not later than the sixtieth day after the date of the Department's initial request for documentation. *See id.* (enacting Texas Insurance Code article 20A.18C(i)); *see also id.* ("provided, however, the department shall not report to the health maintenance organization any information regarding fee schedules, prices, cost of care, or other information not relevant to the monitoring plan"). The delegated network must respond to the Department's report and submit a corrective plan to the Department and to the health maintenance organization not later than the thirtieth day after the date the delegated network receives the Department's report. *See id.* (enacting Texas Insurance Code article 20A.18C(j)). The delegated network "may withhold information regarding fee schedules, prices, cost of care, or other information not relevant to the monitoring plan." *Id.*

The Department's authority to request that a delegated network take corrective action is not limited to the issues raised in the health maintenance organization's request for a written explanation. Article 20A.18C provides that the Department may request that a delegated network take corrective action

> to comply with the department's statutory and regulatory requirements that:

> (1) relate to any matters delegated by the health maintenance organization to the delegated network; or

> (2) are necessary to ensure the health maintenance organization's compliance with statutory and regulatory requirements.

*Id.* (enacting Texas Insurance Code article 20A.18C(*l*)). If a delegated network does not comply with the Department's request for corrective action, the Department may order the health maintenance organization to temporarily or permanently cease assignment of new enrollees to the delegated network; temporarily or permanently transfer enrollees to alternative delivery systems to receive services; or modify or terminate its contract with the delegated network. *See id.* (enacting Texas Insurance Code article 20A.18C(m)).

In sum, the Department's authority under the 1999 version of article 20A.18C with respect to a delegated network is dependent on the health maintenance organization first providing the delegated network with written notice and an opportunity to respond and then requesting the Department to intervene. The Department's intervention authority is not limited to the issues raised in the health maintenance organization's written notice. We cannot determine in an attorney general opinion whether the Department is authorized to intervene with respect to a particular delegated network. We also note, however, that the Department's authority under article 20A.17 to examine physicians' records is independent of the Department's authority under article 20A.18C. A delegated network may be a "physician" within the meaning of the Act's definition of that term. *See* TEX. INS. CODE ANN. art. 20A.02(r) (Vernon Supp. 2002) (defining "physician"). The Department may examine a physician's records under article 20A.17 without a health maintenance organization's request for intervention.

With respect to your earlier question about whether the Department may examine a nonprofit health corporation under article 20A.18C, *see* Request Letter, *supra* note 1, at 5, we conclude that it may, if the nonprofit health corporation falls within the definition of "delegated network." Again, under the Act a "delegated network" is

> an entity, other than a health maintenance organization authorized to do business under this Act or an insurer authorized to do business under Chapter 3, Insurance Code, which: (i) by itself, or through one or more entities, undertakes to arrange for or to provide medical care to an enrollee in exchange for a predetermined payment on a prospective basis; and (ii) performs on behalf of the health maintenance organization, any function regulated by this Act. The term does not include an individual physician or a group of employed physicians practicing medicine under one federal tax identification number and whose total claims paid to providers not employed by the

> group is less than 20 percent of the total collected revenue of the group calculated on a calendar year basis.

Act of May 18, 1999, 76th Leg., R.S., ch. 621, § 1, 1999 Tex. Gen. Laws 3163, 3164 (enacting Texas Insurance Code article 20A.02 (ee)). Thus, a nonprofit health corporation will be a delegated network if it "(i) by itself, or through one or more entities, undertakes to arrange for or to provide medical care to an enrollee in exchange for a predetermined payment on a prospective basis" and "(ii) performs on behalf of the health maintenance organization, any function regulated by this Act," *id.*, and if it does not fall within the exemption in the second sentence of the definition, *see id.*

Your query suggests that a nonprofit health corporation that subcontracts with another entity to "perform[] . . . any function regulated by this Act" does not meet the criterion of (ii) in the first sentence of the definition of "delegated network," because the nonprofit health corporation itself does not perform the regulated function. *See* Request Letter, *supra* note 1, at 3. We disagree with this hypertechnical reading of the statute. The statute speaks in terms of performing a regulated function "on behalf" of a health maintenance organization, focusing on the health maintenance organization's delegation of the performance of regulated functions and the delegated network's contractual agreement to take responsibility for the performance of those functions. An entity that agrees to provide a service for a health maintenance organization by subcontracting for the service, taking contractual responsibility for the service, "performs" the service on behalf of the health maintenance organization within the meaning of the statute.

Your query also suggests that the Act's more general exemption for physicians in article 20A.26(f)(1)(A) exempts a nonprofit health corporation from any regulation under article 20A.18C. *See id.* at 2. We conclude, however, that the physician exemption in article 20A.26(f)(1)(A) does not apply with respect to the definition of delegated networks.

First, the first criterion in the first sentence of the definition of "delegated network" – "(i) by itself, or through one or more entities, undertakes to arrange for or to provide medical care" – uses the term "medical care." As we have noted, the Act defines the term "medical care" by reference to the Medical Practice Act, and the term clearly refers to the practice of medicine by physicians. *See* TEX. INS. CODE ANN. art. 20A.02(p) (Vernon Supp. 2002). Only a physician may "by itself . . . undertake[] . . . to provide medical care" within the meaning of that first criterion. Second, the exemption for physicians and groups of physicians in the second sentence of the definition indicates that physicians and groups of physicians that meet the criteria of the first sentence of the definition and that do not fall within this exemption qualify as delegated networks. *See Harris County v. Crooker*, 248 S.W. 652, 655 (Tex. 1923) ("The inclusion of the specific limitation excludes all others."). Third, applying the general physician exemption in article 20A.26(f)(1)(A) to the definition of delegated networks would render the definition's specific physician exemption meaningless. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) (Texas Supreme Court "will give effect to all the words of a statute and not treat any statutory language as surplusage if possible") (citing *Perkins v. State*, 367 S.W.2d 140 (Tex. 1963)); *R.R. Comm'n v. Olin Corp.*, 690 S.W.2d 628, 631 (Tex. App.–Austin 1985, writ ref'd n.r.e.) ("[E]very word . . . of a statute is presumed to be intentionally used with meaning and purpose."); *see also* TEX. GOV'T CODE ANN.

§ 311.021(2) (Vernon 1998) (in enacting a statute, it is presumed that "the entire statute is intended to be effective") (Code Construction Act). Fourth, the physician exemption in article 20A.26(f)(1)(A) exempts physicians from regulation under the Act to the extent that they provide medical care. *See* TEX. INS. CODE ANN. art. 20A.26(f)(1)(A) (Vernon Supp. 2002); *see also id.* art. 20A.29 (Vernon 1981) ("This Act shall not be construed to . . . (b) authorize any person to regulate, interfere, or intervene in any manner *in the practice of medicine* or any healing art.") (emphasis added). It does not exempt physicians from regulation under the Act to the extent they engage in other activities, such as performing regulated functions on behalf of a health maintenance organization pursuant to a delegation agreement. Lastly, article 21.52F does not broaden the scope of article 20A.26(f) with respect to nonprofit health corporations that provide only medical care. *See supra* p. 13.

The Department's intervention authority under article 20A.18C includes the authority to examine records of a delegated network. *See* Act of May 18, 1999, 76th Leg., R.S., ch. 621, § 2, 1999 Tex. Gen. Laws 3163, 3167 (enacting Texas Insurance Code article 20A.18C(h) providing that upon receipt of a request for intervention, the Department may "(1) request financial and operational documents from the delegated network to further investigate deficiencies indicated by the monitoring plan" and "(2) conduct an on-site audit of the delegated network if the department determines that the delegated network is not complying with the monitoring standards required under Subsection (a)(1) of this section"). Thus, upon receiving a request for intervention from the health maintenance organization regarding a nonprofit health corporation that is a delegated network, the Department may examine the nonprofit health corporation. Of course, the Department's authority under article 20A.17 to examine the records of a nonprofit health corporation is independent of the Department's authority under article 20A.18C and does not require a health maintenance organization's request for intervention.

Finally, because the Department seeks financial information about the nonprofit health corporation at issue, you ask whether "a physician organization that accepts risk only for medical services [is] legally required to establish reserves under Texas law?" Request Letter, *supra* note 1, at 6; *see also id.* at 4-5 (noting that Department seeks monthly bank statements and information regarding reserves). As the Department notes in its brief, there is no specific statutory reserve requirement for nonprofit health corporations.[4] Under the 1999 version of article 20A.18C, however, a nonprofit health corporation that is a delegated network may be required to provide proof of its financial viability pursuant to its written agreement with the health maintenance organization.

Subsection (a)(8)(A)(iii) of article 20A.18C provides that the written agreement between a health maintenance organization and a delegated network must include "an acknowledgment and agreement by the delegated network" that the health maintenance organization is "not precluded from contractually requesting that the delegated network provide proof of financial viability." Act of May 18,1999, 76th Leg., R.S., ch. 621, § 2, 1999 Tex. Gen. Laws 3163, 3165 (enacting Texas

---

[4]*See* Brief from Sara Shiplet Waitt, Senior Associate Commissioner, Texas Department of Insurance, to Susan Denmon Gusky, Chair, Opinion Committee, Office of Attorney General, at 9 (June 14, 2002) (on file with Opinion Committee).

Insurance Code article 20A.18C(a)(8)(A)(iii)). If the health maintenance organization requests pursuant to the written agreement that the delegated network provide proof of financial viability and the delegated network fails to do so, the Department may intervene. *See id.* at 3166 (enacting Texas Insurance Code article 20A.18C(d) requiring health maintenance organization that receives information that delegated network is not operating in accordance with its written agreement to notify delegated network in writing); *id.* at 3167 (enacting Texas Insurance Code article 20A.18C(g) providing that health maintenance organization must request Department to intervene if health maintenance organization and delegated network are unable to reach an agreement as to whether delegated network is complying with the written agreement). Although article 20A.18C does not expressly authorize the Department to examine a delegated network's financial information to determine whether the network is complying with its written agreement with the health maintenance organization, this authority is implicit in the Department's express authority to conduct an audit of the delegated network "if the department determines that the delegated network is not complying with the monitoring standards" required under section (a)(1) of article 20A.18C, *see id.* (enacting Texas Insurance Code article 20A.18C(h)), and its broad powers to require the delegated network to take corrective action, *see id.* (enacting Texas Insurance Code article 20A.18C(*l*) providing that Department may request that a delegated network take corrective action to comply with "the department's statutory and regulatory requirements that: (1) relate to any matters delegated by the health maintenance organization to the delegated network; or (2) are necessary to ensure the health maintenance organization's compliance with statutory and regulatory requirements."); *see also id.* (enacting Texas Insurance Code article 20A.18C(m) specifying Department's authority if delegated network fails to take corrective action); *see also Pub. Util. Comm'n v. City Pub. Serv. Bd.,* 53 S.W.3d 310, 315 (Tex. 2001) ("[A] state administrative agency has only those powers that the Legislature expressly confers upon it. But an agency may also have implied powers that are reasonably necessary to carry out the express responsibilities given to it by the Legislature.").

## S U M M A R Y

A nonprofit health corporation certified by the Texas Board of Medical Examiners is a physician for purposes of the Health Maintenance Organization Act, chapter 20A of the Texas Insurance Code. *See* TEX. INS. CODE ANN. art. 20A.02(r)(2) (Vernon Supp. 2002). Article 20A.17 of the Insurance Code authorizes the Texas Department of Insurance to examine health maintenance organizations. In connection with the examination of a health maintenance organization, the Department is authorized to examine records of a nonprofit health corporation, with which the health maintenance organization has a contract, that are "relevant to its relationship with the health maintenance organization." *Id.* art. 20A.17(b)(1). The Department's authority to examine a nonprofit health corporation under article 20A.17 depends only on whether the health maintenance organization has a contract with the nonprofit health corporation and does not depend on whether the nonprofit health corporation provides only medical care or is paid on a prospective basis under the contract. The Department's authority to examine medical, hospital, and health records is limited to examinations of health maintenance organizations concerning the quality of health care services. *See id.* art. 20A.17(a), (b)(3).

Article 20A.18C of the Insurance Code regulates health maintenance organizations' delegation of regulated functions. Under article 20A.18C, as enacted in 1999, the Department's authority with respect to a delegated network depends on the health maintenance organization first providing the delegated network with written notice and an opportunity to respond and then requesting the Department to intervene. The Department's intervention authority is not limited to the issues raised in the health maintenance organization's written notice. A nonprofit health corporation may fall within the statutory definition of a "delegated network" and may be subject to examination by the Department as a delegated network, if the health maintenance organization requests the Department to intervene. This examination could include the nonprofit health corporation's financial condition. The Department's authority under article 20A.17 to examine the records of a nonprofit health corporation is independent of the Department's authority under article 20A.18C and does not require a health maintenance organization's request for intervention.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee