OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

September 4, 2002

The Honorable Toby Goodman
Chair, House Committee on Juvenile
  Justice and Family Issues
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0552

Re: Whether a county is required to establish a certificate of registration program for dangerous wild animals, and related questions (RQ-0525-JC)

Dear Representative Goodman:

You have requested our opinion regarding the duty of a commissioners court to register and regulate dangerous wild animals in accordance with the provisions of subchapter E of chapter 822 of the Health and Safety Code.[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.101-.116 (Vernon Supp. 2002). For the reasons set forth below, we conclude that the commissioners court of every county that has not entirely prohibited the "ownership, possession, confinement, or care" of dangerous wild animals within its jurisdiction, *see id.* § 822.116, is required to have adopted, no later than December 1, 2001, an order "necessary to implement and administer the certificate of registration program" established by subchapter E of chapter 822. *See* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, § 6(c), 2001 Tex. Gen. Laws 90, 96. A commissioners court may not exempt from the requirements of subchapter E any person or organization not specifically excepted under section 822.102(a). *See* TEX. HEALTH & SAFETY CODE ANN. § 822.102(a) (Vernon Supp. 2002). Any resident of the county may bring an action in mandamus in a district court of the county to compel the commissioners court to adopt the certificate of registration program.

House Bill 1362, enacted by the Seventy-seventh Texas Legislature, amended chapter 822 of the Health and Safety Code by adding subchapter E. *See* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, 2001 Tex. Gen. Laws 90. Section 822.103 provides that "[a] person may not own, harbor, or have custody or control of a dangerous wild animal for any purpose unless the person holds a certificate of registration for that animal issued by an animal registration agency." TEX. HEALTH & SAFETY CODE ANN. § 822.103(a) (Vernon Supp. 2002). A dangerous wild animal is defined to include a lion, tiger, cougar, leopard, cheetah, jaguar, bobcat, lynx, serval, caracal, hyena, bear, coyote, jackal, gorilla, baboon, chimpanzee, an orangutan, and an ocelot, or any hybrid therefrom. *See id.* § 822.101(4). "Animal registration agency" is defined as "the municipal or county animal

---

[1]*See* Letter from Honorable Toby Goodman, Chair, House Committee on Juvenile Justice and Family Issues, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 18, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

control office with authority over the area where a dangerous wild animal is kept or a county sheriff in an area that does not have an animal control office." *Id.* § 822.101(1).

Section 822.104 specifies the requirements for obtaining "an original or renewal certificate of registration for a dangerous wild animal," including the particulars of the application. *Id.* § 822.104. Certain documents must accompany the application, such as proof of liability insurance, a color photograph of each animal being registered, a photograph and a statement of the dimensions of the primary enclosure in which each animal is to be kept as well as a scale diagram of the premises, and, if the applicant holds a dealer or exhibitor's license issued by the United States Department of Agriculture, "a clear and legible photocopy of the license." *Id.* § 822.104(c). An application for renewal must include a statement signed by a licensed veterinarian to the effect that he or she has inspected the animal within thirty days of the date of filing the renewal application and "finds that the care and treatment of each animal by the owner meets or exceeds the standards prescribed under this subchapter." *Id.* § 822.104(d). A certificate of registration "is not transferrable and is valid for one year after its date of issuance or renewal unless revoked." *Id.* § 822.103(b). The statute permits the animal registration agency to charge a reasonable fee for the "application, issuance, and renewal of a certificate of registration," not to exceed "$50 for each animal registered" and not to exceed "$500 for each person registering animals, regardless of the number of animals owned by the person." *Id.* § 822.103(c).

Section 822.102 lists eleven exceptions to the applicability of subchapter E.[2] You first ask whether a county is required to register and regulate all dangerous wild animals kept within its

---

[2]"This subchapter does not apply to: (1) a county, municipality, or [an] agency of the state or . . . of the United States or an agent or official of a county, municipality, or agency acting in an official capacity; (2) a research facility, as that term is defined by Section 2(e), Animal Welfare Act (7 U.S.C. Section 2132), and its subsequent amendments, that is licensed by the secretary of agriculture of the United States under that Act; (3) an organization that is an accredited member of the American Zoo and Aquarium Association; (4) an injured, infirm, orphaned, or abandoned dangerous wild animal while being transported for care or treatment; (5) [or] . . . while being rehabilitated, treated, or cared for by a licensed veterinarian, an incorporated humane society or animal shelter, or a person who holds a rehabilitation permit issued under Subchapter C, Chapter 43, Parks and Wildlife Code; (6) a dangerous wild animal owned by and in the custody and control of a transient circus company that is not based in this state if: (A) the animal is used as an integral part of the circus performance; and (B) . . . is kept within this state only during the time the circus is performing in this state or for a period of time not to exceed 30 days while the circus is performing outside the United States; (7) a dangerous wild animal while in the temporary custody or control of a television or motion picture production company [that is] filming . . . in this state; (8) a dangerous wild animal owned by and in the possession, custody, or control of a college or university solely as a mascot . . . ; (9) a dangerous wild animal while being transported in interstate commerce through the state in compliance with the Animal Welfare Act (7 U.S.C. Section 2131 et seq.) and its subsequent amendments and the regulations adopted under that Act; (10) a nonhuman primate owned by and in the control and custody of a person whose only business is supplying nonhuman primates directly and exclusively to biomedical research facilities and who holds a Class "A" or Class "B" dealer's license issued by the secretary of agriculture of the United States under the Animal Welfare Act (7 U.S.C. Section 2131 et seq.) and its subsequent amendments; and (11) a dangerous wild animal that is: (A) owned by or in the possession, control, or custody of a person who is a participant in a species survival plan of the American Zoo and Aquarium Association for that species; and (B) an integral part of that species survival plan." TEX. HEALTH & SAFETY CODE ANN. § 822.102(a) (Vernon Supp. 2002).

borders by anyone and under any circumstance other than those exempted under section 822.102. *See* Request Letter, *supra* note 1, at 1.

On the one hand, subsection 822.116(b) of the Health and Safety Code permits a county by order to *entirely prohibit* "the ownership, possession, confinement, or care of a dangerous wild animal." TEX. HEALTH & SAFETY CODE ANN. § 822.116(b) (Vernon Supp. 2002). On the other hand, if a county opts not to bar absolutely the keeping of dangerous wild animals, section 6 of House Bill 1362 provides that "[n]ot later than December 1, 2001, each municipality and county *shall* adopt any ordinance or order necessary to implement and administer the certificate of registration program." Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, § 6(c), 2001 Tex. Gen. Laws 90, 96 (emphasis added). Section 311.016(2) of the Government Code declares that, "unless the context in which the word . . . appears necessarily requires a different construction or unless a different construction is expressly provided by statute . . . '[s]hall' imposes a duty." TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 1998). Thus, a plain reading of House Bill 1362 requires a county, unless it has prohibited the keeping of dangerous wild animals within its jurisdiction, to have established a certificate of registration program by December 1, 2001. In fact, as we have noted, an "[a]nimal registration agency" is defined as, *inter alia*, "a county sheriff in an area that does not have an animal control office." TEX. HEALTH & SAFETY CODE ANN. § 822.101(1) (Vernon Supp. 2002). Although subsection 822.116(a) provides that "[t]his subchapter does not affect the applicability of any other law, rule, order, ordinance, or other legal requirement of this state or a political subdivision of this state," *see id.* § 822.116(a), this provision may not be used by a commissioners court to ignore the clear directive of section 6 of House Bill 1362, which requires a county to implement and administer a certificate of registration program. *See* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, § 6(c), 2001 Tex. Gen. Laws 90, 96. We conclude that every county that has not entirely prohibited the "ownership, possession, confinement, or care of a dangerous wild animal" within its jurisdiction is required, by December 1, 2001, to have adopted an order "necessary to implement and administer the certificate of registration program" established by subchapter E, chapter 822 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.116(b) (Vernon Supp. 2002); Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, § 6(c), 2001 Tex. Gen. Laws 90, 96.

You next ask whether a county may exempt from the requirements of subchapter E a person or organization other than those specifically exempted under section 822.102(a). *See* Request Letter, *supra* note 1, at 1. As we have indicated, section 822.102(a) lists eleven exceptions to the registration requirements of subchapter E. *See supra,* note 2. It is a well established rule of construction that where a statute contains express exceptions, no other exceptions may be implied. *See State v. Richards*, 301 S.W.2d 597, 600 (Tex. 1957); *R.R. Comm'n v. Olin Corp.*, 690 S.W.2d 628, 631 (Tex. App.–Austin 1985, writ ref'd n.r.e.) ("When there are specific exceptions in a statutory definition, no other exceptions are to be presumed."). Thus, a county may not exempt from the requirements of subchapter E a person or organization not specifically exempted under section 822.102(a).

Finally, you ask who has standing to enforce the mandate of House Bill 1362, which directs a county to implement and administer a certificate of registration program, and what remedies are available to enforce that mandate. *See* Request Letter, *supra* note 1, at 1. As we have observed,

section 6(c) of House Bill 1362 imposes a duty on counties to create a certificate of registration program. In our view, the appropriate remedy in such a situation is mandamus. "There are three requisites for a mandamus: a legal duty to perform a nondiscretionary act, a demand for performance, and a refusal." *Doctors Hosp. Facilities v. Fifth Court of Appeals*, 750 S.W.2d 177, 178 (Tex. 1988); *see also In re Bailey*, 975 S.W.2d 430, 432 (Tex. App.–Waco 1998, no pet.) ("Mandamus will issue when there is a legal duty to perform a nondiscretionary, ministerial act, a demand for performance of that act, and a refusal."). Because, as we have determined, House Bill 1362 *requires* a county to implement and administer a certificate of registration program, doing so is a "nondiscretionary, ministerial act."

A suit for mandamus must be prosecuted by a real party in interest. *See Porth v. Currie*, 613 S.W.2d 534, 538 (Tex. Civ. App.–Tyler 1981, no writ). A "real party in interest" is one who can "show that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity." *Id.* A justiciable interest is manifest when there is "an actual controversy between parties who have conflicting personal stakes." *Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex. App.–El Paso 1994, no writ). If a commissioners court has not complied with the directive of House Bill 1362 and is unwilling to do so, any resident of the county may have a justiciable interest in compelling that body to act. Original mandamus jurisdiction over county officials is vested in the district court in the "exercise of its general supervisory control over the orders of the commissioners court." *Vondy v. Comm'rs Court*, 620 S.W.2d 104, 109 (Tex. 1981). We conclude that, where a commissioners court has not barred outright the keeping of dangerous wild animals within its jurisdiction, any resident of the county may bring an action in mandamus in a district court of the county to compel the commissioners court to implement and administer the certificate of registration program established by subchapter E of chapter 822 of the Health and Safety Code.

## S U M M A R Y

The commissioners court of every county that has not entirely prohibited the "ownership, possession, confinement, or care" of dangerous wild animals within its jurisdiction is required to have adopted, no later than December 1, 2001, an order "necessary to implement and administer the certificate of registration program" established by subchapter E of chapter 822 of the Texas Health and Safety Code. *See* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 54, § 6(c), 2001 Tex. Gen. Laws 90, 96; TEX. HEALTH & SAFETY CODE ANN. § 822.116(b) (Vernon Supp. 2002). A commissioners court may not exempt from the requirements of subchapter E any person or organization not specifically excepted under section 822.102(a). Any resident of the county may bring an action in mandamus in a district court of the county to compel the commissioners court to adopt the certificate of registration program.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee