James P. BOLDRICK, Appellant,

v.

BTA OIL PRODUCERS, a
partnership, Appellee.

No. 11–06–00029–CV.

Court of Appeals of Texas,
Eastland.

March 22, 2007.

James P. Boldrick, Boldrick, Clifton & Holland, P.C., Midland, for appellant.

Michael T. Morgan, Bullock, Scott, Neisig, Morgan, Leeton & Strauss, P.C., Midland, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and HILL, J.[1]

## OPINION

JOHN G. HILL, Justice (Assigned).

James P. Boldrick appeals from a final judgment that denied his summary judgment motion while granting the summary judgment motion of appellee BTA Oil Producers, a partnership. The judgment, among other things, declared that certain overriding royalty interests claimed by Boldrick are not payable to him until such time that nonconsent penalty provisions of

---

1. John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth sitting by assignment.

a September 1973 joint operating agreement have been fully recouped by consenting parties and, accordingly, that BTA is not required to cause the payment of those overriding royalty interests until those funds are received by BTA. Boldrick contends in five points on appeal that the trial court erred in granting BTA's summary judgment motion and denying his for the following reasons: (1) his overriding royalty interests are not subject to the nonconsent penalty provisions of the September 1973 joint operating agreement as between him and BTA; (2) his overriding royalty interests are not "subsequently created interests" as that term is used in the joint operating agreement for BTA's benefit; (3) the court has misconstrued the effects of one division order presented to it and failed to recognize the language of the division order that applies to the well in question; (4) even if the interest BTA relinquished to Chevron during payout pursuant to Paragraph 12 of the operating agreement includes the overriding royalty interests claimed by Boldrick, BTA is not excused from the specific language of its overriding royalty grant to Boldrick's predecessor in interest; and (5) any obligation or lack of obligation of BTA for drilling or development of the oil and gas leasehold estate is not a controlling issue in the case. We construe all of these points as a single issue: whether the trial court erred in granting summary judgment for BTA while denying summary judgment to Boldrick. We affirm.

When reviewing a traditional motion for summary judgment, the following standards apply: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Goswami v. Metro. Sav. & Loan Ass'n.,* 751 S.W.2d 487, 491 (Tex.1988).

The facts in this case are undisputed. On September 15, 1973, Texaco as operator and Ben J. Fortson and Exxon as nonoperators entered into a joint operating agreement for the exploration and development of their leases and interests for oil and gas with respect to all of Section 51, Block 34, of the H & TC Ry. Co. Survey, Ward County, Texas. On February 4, 1977, Texaco and Sabine Production Company entered into a sublease agreement with respect to this same property. This sublease was subject to the 1973 joint operating agreement. BTA and Sabine shared a sublease interest.

After a test well, the 7706 JV–P Stallings No. 1 Well, was drilled and was paid out as defined in the February 4, 1977 agreement, BTA executed an assignment of overriding royalty interest, pursuant to the terms of a February 11, 1977 letter agreement, to Sabine, Carroll M. Thomas, Clyde R. Harris, and R.G. Anderson. Boldrick was the successor of Harris's interest by virtue of an assignment to him from Harris. BTA's assignment of an overriding royalty interest provided in part that "[s]aid overriding royalty interests shall be free and clear of all costs of development and operation" and "[t]his Assignment shall not imply any leasehold preservation, drilling or development obligation on the part of Assignor."

Subsequently, Chevron USA, Inc., the operator under the 1973 operating agreement and an owner of an undivided interest, proposed the drilling of the Stallings Gas Unit 2H Well; but BTA elected "nonconsent status" as that term is defined in Paragraph 12 of the operating agreement. The Stallings Gas Unit 2H Well was drilled and completed.

Chevron initially made payments to Boldrick on production from the Stallings Gas Unit 2H Well but, later, requested that the funds paid be returned because Chevron contended that its division order was the result of a mistake. Neither BTA nor Boldrick are currently receiving any payments on production from the Stallings Gas Unit 2H Well.

Boldrick and others sued BTA and Chevron/Texaco for money damages, alleging breach of contract, unjust enrichment, and conversion all because its share of the overriding royalty interest, which, according to the assignment was to be free and clear of all costs of development and operation, was being used for the benefit of the defendants, including BTA. As a counterclaim, Chevron sought a declaratory judgment that it has no obligation to pay the overriding royalty interest claimed by Boldrick and the other plaintiffs, while BTA sought declaratory judgment that it has no obligation to account to the plaintiffs for the overriding royalty interest and that, because it has not received any of the proceeds attributable to the share of oil and gas claimed by the plaintiffs, it has no obligation to account to the plaintiffs for the overriding royalty interest. As noted, BTA and Boldrick are the only remaining parties to the lawsuit.

Paragraph 31(b) of the joint operating agreement provides that any subsequently created interest shall be specifically made subject to all terms and provisions of the operating agreement. It defines a subsequently created interest so as to include the creation, subsequent to the joint operating agreement, of an overriding royalty created by a working interest owner out of its working interest. Inasmuch as BTA, a working interest owner, created Boldrick's overriding royalty out of its working interest subsequent to the operating agreement, the overriding royalty is subject to all terms and provisions of the operating agreement.

Paragraph 31(b) further provides that, where such a working interest owner elects to go nonconsent under Paragraph 12 of the joint operating agreement, the subsequently created interest shall be chargeable with a pro rata portion of all costs and expenses under the operating agreement in the same manner as if it were a working interest. Consequently, inasmuch as BTA elected to go nonconsent, Boldrick's overriding royalty became chargeable with a pro rata portion of all costs and expenses under the operating agreement in the same manner as if it were a working interest. Inasmuch as the use of the proceeds that would have come to Boldrick under his overriding royalty to meet the costs and expenses under the operating agreement is mandated by the operating agreement, such a use could not constitute a breach of contract between Boldrick and BTA that was subject to the operating agreement and could not constitute unjust enrichment or conversion. Any issue as to whether BTA must reimburse Boldrick for any costs and expenses paid with the proceeds of Boldrick's overriding royalty if and when it receives proceeds representing its working interest in the well in question was not determined in the trial court, and we do not address that issue in this appeal.

Boldrick contends in point one that his overriding royalty interest is not subject to the nonconsent penalty provision of the operating agreement as between him and BTA. In point two, he contends that his overriding royalty interest is not a "subsequently created interest" as that term is used in the joint operating agreement for BTA's benefit. He groups these two points for purposes of argument in his brief.

In his argument under these points, Boldrick notes that he had notice of all documents pertinent to the conveyance of his overriding royalty interest. While he asserts that the trial court, in its letter opinion to the parties, spent an inordinate amount of time on the issue of notice, his point seems to be that the matter of notice is uncontested.

Boldrick takes the position that the documents of record, including title opinions, clearly show why his interest is not a subsequently created interest. He refers us to provisions of the 1977 sublease agreement that prohibited any assignment by Sabine without the written consent of Texaco and that, if Texaco ever reacquired Section 51 from Sabine or its assigns, that interest would be free and clear of overriding royalty interests, while noting that Texaco agreed to the creation by BTA of the overriding royalty interest to his predecessor in title and that Texaco never reacquired its interest from BTA. We fail to see how any of these facts show that Boldrick's overriding royalty interest was not subject to the nonconsent penalty provisions of the joint operating agreement as between him and BTA or that it is not a "subsequently created interest" as that term is used in the joint operating agreement. He suggests that there are judicial admissions that, when he took title to his overriding royalty interest, it was subject to the joint operating agreement, including Paragraph 31(b), except that it would not be a subsequently created interest in that Chevron/Texaco had consented to the override. He does not specifically refer us to a judicial admission that his interest would not be a subsequently created interest, and we are not aware of any. We disagree with his contention that Chevron/Texaco's consent to the assignment by BTA of Boldrick's overriding royalty interest means that that interest, which was created subsequent to the 1973 joint operating agreement, was not a subsequently created interest under the terms of that agreement.

Boldrick refers us to indemnity language in Paragraph 31(b) of the joint operating agreement and to language in Paragraph 13 of that agreement that suggest a possible liability of BTA to Boldrick. We have held that BTA has no current liability to Boldrick for the sums that would be due from his overriding royalty interest were it not for BTA's nonconsenting status and have noted that neither we nor the trial court have made any determination as to whether BTA has such a liability in the future after all nonconsenting penalties have been paid and BTA and Boldrick are receiving payments for their respective interests. We find that the indemnity provisions of Paragraph 31(b) and Paragraph 13 are not inconsistent with that holding.

Boldrick urges in point three that the division order relied upon by the trial court did not apply to the well as to which BTA was a nonconsenting party. The division order, executed by Boldrick's predecessor, provides that BTA has no obligation to disburse funds that it has not received. Boldrick suggests that the division order did not apply to the well in question nor did it relate to the same formation. However, the division order by its terms is applicable to all wells located in the described area, an area that includes the well in question. Even if this division order was not effective, it would not change our conclusion that, considering all the documents in question and any other summary judgment evidence, BTA has no present obligation to pay Boldrick for his overriding royalty interest that is currently being used as provided by Paragraph 31(b) of the joint operating agreement. Boldrick relies upon a Chevron division order that Chevron contends was a mistake. For the reason stated, we agree that Chevron's division order was a mis-

take. We disagree with Boldrick's assertion that BTA, in a capacity as purchaser or assignee, has any current duty to pay him his overriding royalty.

Boldrick insists in point four that, even if the interest that BTA relinquished to Chevron during payout pursuant to Paragraph 12 of the joint operating agreement includes the overriding royalty interest claimed by him, BTA is not excused from the specific language of its overriding royalty grant to him. In point five, he asserts that BTA's obligation or lack thereof for drilling or development of the oil and gas leasehold estate is not a controlling issue of the case. He argues these two points together.

Boldrick refers us to Paragraph 12 of the joint operating agreement. That paragraph provides that, when operations are commenced for the drilling of a well by consenting parties, the nonconsenting parties relinquish to the consenting parties all of their interests in the well and share of production until the proceeds equal the total of the costs and penalties that are provided in the paragraph. The paragraph notes that proceeds that apply to the total due before the interests revert back to the nonconsenting party do not include overriding royalty interests. However, as previously noted, Paragraph 31(b) provides that, where those overriding royalty interests are subsequently created interests as defined, each is chargeable with a pro rata portion of all costs and expenses as if it were a working interest. If there is any conflict between the two paragraphs, Paragraph 31(b) provides that it is applicable "[n]otwithstanding anything herein to the contrary." We find nothing in Paragraph 12 that conflicts with our holding in this case.

Boldrick refers us to language in Paragraph 13 of the joint operating agreement stating that "[e]ach party shall pay or deliver, or cause to be paid or delivered, all royalties due the owners of . . . overriding royalties . . . as shown by Exhibit A." We first note that Paragraph 13 deals with "RIGHT TO TAKE PRODUCTION IN KIND" and that this case does not involve the taking of production in kind. We also note that Boldrick's royalty interest is not included in either the original "Exhibit A" attached to the joint operating agreement or the amendment to "Exhibit A" that was part of the 1977 sublease transaction. Again, we note that, in the event that Paragraph 13 conflicts with Paragraph 31(b), we must give effect to Paragraph 31(b) because of its language of "[n]otwithstanding anything herein to the contrary."

Boldrick refers us to certain division order title opinions, which he asserts support his view that he "would always receive payment." These opinions, one dated January 1978 and the other April 1978, showed the percentage to be paid at that time by BTA to Boldrick's predecessor for his overriding royalty interest. There is nothing that would support Boldrick's view that he would always receive payment, even as to a future project for which BTA executed its right, as noted in the joint operating agreement and in its assignment of the overriding royalty interest, to be a nonconsenting party to that project.

Boldrick asserts that the trial court erroneously concluded that BTA owned no interest and had conveyed its interest back to the operator. The only citation he gives in support of his assertion is the 1977 sublease agreement between Sabine and Texaco. In its opinion letter written to the parties, the trial court merely noted that, under the operating agreement, the interest in a producing well of a nonconsenting party is relinquished to the consenting parties, is accomplished without deeds of conveyance, and reverts upon the recoupment of penalties attributable to nonconsent. This expression by the trial court is

consistent with Paragraph 31b of the joint operating agreement.

Boldrick refers us to a number of cases that he indicates show that for at least some purposes the nonconsenting owner continues to have an ownership interest pending payment of expenses and penalty. These include *United States v. Cocke,* 399 F.2d 433 (5th Cir.1968) (carrying party, not carried party, has right to certain federal income tax deductions); *Dorsett v. Valence Operating Co.,* 111 S.W.3d 224 (Tex.App.-Texarkana 2003), *rev'd on other grounds,* 164 S.W.3d 656 (Tex.2005) (nonconsenting party relinquishes right to share of production revenue until consenting party receives designated share of expenses); *R.R. Comm'n of Tex. v. Olin Corp.,* 690 S.W.2d 628 (Tex.App.-Austin), *writ ref'd n.r.e.,* 701 S.W.2d 641 (Tex.1985) (Texas Railroad Commission has authority to order a nonconsenting party, which has a carried interest pending payment of specified costs, to plug well where operator lacks the funds to do so). Whatever interest BTA might continue to have pending its payment of the costs of development of the well in question and the penalties provided due to its nonconsenting status, it does not change the fact that Boldrick's interest as the holder of an overriding royalty interest assigned to it by BTA out of BTA's interest is chargeable with a pro rata share of all costs and expenses to be received by the consenting parties and applied to the costs of production. In oral argument, Boldrick relied upon the case of *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342 (Tex.2006). We find that case to be distinguishable. In *Seagull,* the court held that one selling one's oil and gas working interest remains liable to the operator under the operating agreement unless released by the operator or the terms of the agreement. 207 S.W.3d at 344. The court based its ruling on the fact that the operating agreement did not deal specifically with the issue of an assignment of a working interest to a third party. *Id.* at 346. In the case at bar, the joint operating agreement does have a specific provision that deals with what happens to an overriding royalty interest created by a nonconsenting party. We conclude that the trial court did not err in granting BTA's motion for summary judgment and in denying Boldrick's motion for summary judgment. We overrule Boldrick's points one, two, three, four, and five.

The judgment is affirmed.