Opinion filed March 22, 2007















 
 
  
 
 







 
 
  
 
 




Opinion filed March 22, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00029-CV 

                                                     __________

 

                                   JAMES
P. BOLDRICK, Appellant

 

                                                             V.

 

                    BTA
OIL PRODUCERS, A PARTNERSHIP, Appellee

 



 

                                             On
Appeal from the 238th District Court 

 

                                                           Midland County, Texas

 

                                                  Trial
Court Cause No. CV-44,500

 



 

                                                                   O
P I N I O N

 








James P. Boldrick appeals from a final judgment
that denied his summary judgment motion while granting the summary judgment
motion of appellee BTA Oil Producers, a partnership.  The judgment, among other things, declared
that certain overriding royalty interests claimed by Boldrick are not payable
to him until such time that nonconsent penalty provisions of a September 1973
joint operating agreement have been fully recouped by consenting parties and,
accordingly, that BTA is not required to cause the payment of those overriding
royalty interests until those funds are received by BTA.  Boldrick contends in five points on appeal
that the trial court erred in granting BTA=s
summary judgment motion and denying his for the following reasons:  (1) his overriding royalty interests are not
subject to the nonconsent penalty provisions of the September 1973 joint
operating agreement as between him and BTA; (2) his overriding royalty
interests are not Asubsequently
created interests@ as that
term is used in the joint operating agreement for BTA=s
benefit; (3) the court has misconstrued the effects of one division order
presented to it and failed to recognize the language of the division order that
applies to the well in question; (4) even if the interest BTA relinquished to
Chevron during payout pursuant to Paragraph 12 of the operating agreement
includes the overriding royalty interests claimed by Boldrick, BTA is not
excused from the specific language of its overriding royalty grant to Boldrick=s predecessor in interest; and (5) any
obligation or lack of obligation of BTA for drilling or development of the oil
and gas leasehold estate is not a controlling issue in the case.  We construe all of these points as a single
issue:  whether the trial court erred in
granting summary judgment for BTA while denying summary judgment to Boldrick.  We affirm.

When reviewing a traditional motion for summary
judgment, the following standards apply: (1) the movant for summary judgment
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in
its favor.  Goswami v. Metro. Sav.
& Loan Ass=n.,
751 S.W.2d 487, 491 (Tex.
1988).

The facts in this case are undisputed.  On September 15, 1973, Texaco as operator and
Ben J. Fortson and Exxon as nonoperators entered into a joint operating
agreement for the exploration and development of their leases and interests for
oil and gas with respect to all of Section 51, Block 34, of the H&TC Ry.
Co. Survey, Ward County, Texas.  On
February 4, 1977, Texaco and Sabine Production Company entered into a sublease
agreement with respect to this same property. 
This sublease was subject to the 1973 joint operating agreement.  BTA and Sabine shared a sublease interest.








After
a test well, the 7706 JV-P Stallings No. 1 Well, was drilled and was paid out
as defined in the February 4, 1977 agreement, BTA executed an assignment of
overriding royalty interest, pursuant to the terms of a February 11, 1977
letter agreement, to Sabine, Carroll M. Thomas, Clyde R. Harris, and R.G.
Anderson.  Boldrick was the successor of
Harris=s
interest by virtue of an assignment to him from Harris.  BTA=s
assignment of an overriding royalty interest provided in part that A[s]aid overriding royalty interests
shall be free and clear of all costs of development and operation@ and A[t]his
Assignment shall not imply any leasehold preservation, drilling or development
obligation on the part of Assignor.@  

Subsequently,
Chevron USA, Inc., the operator under the 1973 operating agreement and an owner
of an undivided interest, proposed the drilling of the Stallings Gas Unit 2H
Well; but BTA elected Anon-consent
status@ as that
term is defined in Paragraph 12 of the operating agreement.   The Stallings Gas Unit 2H Well was drilled
and completed.

Chevron
initially made payments to Boldrick on production from the Stallings Gas Unit
2H Well but, later, requested that the funds paid be returned because Chevron
contended that its division order was the result of a mistake.  Neither BTA nor Boldrick are currently
receiving any payments on production from the Stallings Gas Unit 2H Well.  

Boldrick
and others sued BTA and Chevron/Texaco for money damages, alleging breach of
contract, unjust enrichment, and conversion all because its share of the
overriding royalty interest, which, according to the assignment was to be free
and clear of all costs of development and operation, was being used for the
benefit of the defendants, including BTA. 
As a counterclaim, Chevron sought a declaratory judgment that it has no
obligation to pay the overriding royalty interest claimed by Boldrick and the
other plaintiffs, while BTA sought declaratory judgment that it has no
obligation to account to the plaintiffs for the overriding royalty interest and
that, because it has not received any of the proceeds attributable to the share
of oil and gas claimed by the plaintiffs, it has no obligation to account to
the plaintiffs for the overriding royalty interest.  As noted, BTA and Boldrick are the only
remaining parties to the lawsuit.

Paragraph
31(b) of the joint operating agreement provides that any subsequently created
interest shall be specifically made subject to all terms and provisions of the
operating agreement.  It defines a
subsequently created interest so as to include the creation, subsequent to the
joint operating agreement, of an overriding royalty created by a working
interest owner out of its working interest. 
Inasmuch as BTA, a working interest owner, created Boldrick=s overriding royalty out of its working
interest subsequent to the operating agreement, the overriding royalty is
subject to all terms and provisions of the operating agreement.  








Paragraph
31(b) further provides that, where such a working interest owner elects to go
nonconsent under Paragraph 12 of the joint operating agreement, the
subsequently created interest shall be chargeable with a pro rata portion of
all costs and expenses under the operating agreement in the same manner as if
it were a working interest. 
Consequently, inasmuch as BTA elected to go nonconsent, Boldrick=s overriding royalty became chargeable
with a pro rata portion of all costs and expenses under the operating agreement
in the same manner as if it were a working interest.  Inasmuch as the use of the proceeds that
would have come to Boldrick under his overriding royalty to meet the costs and
expenses under the operating agreement is mandated by the operating agreement,
such a use could not constitute a breach of contract between Boldrick and BTA
that was subject to the operating agreement and could not constitute unjust
enrichment or conversion.  Any issue as
to whether BTA must reimburse Boldrick for any costs and expenses paid with the
proceeds of Boldrick=s
overriding royalty if and when it receives proceeds representing its working
interest in the well in question was not determined in the trial court, and we
do not address that issue in this appeal.

Boldrick
contends in point one that his overriding royalty interest is not subject to
the nonconsent penalty provision of the operating agreement as between him and
BTA.  In point two, he contends that his
overriding royalty interest is not a Asubsequently
created interest@ as that
term is used in the joint operating agreement for BTA=s
benefit.  He groups these two points for
purposes of argument in his brief.  

In
his argument under these points, Boldrick notes that he had notice of all
documents pertinent to the conveyance of his overriding royalty interest.  While he asserts that the trial court, in its
letter opinion to the parties, spent an inordinate amount of time on the issue
of notice, his point seems to be that the matter of notice is uncontested.  








Boldrick
takes the position that the documents of record, including title opinions,
clearly show why his interest is not a subsequently created interest.  He refers us to provisions of the 1977
sublease agreement that prohibited any assignment by Sabine without the written
consent of Texaco and that, if Texaco ever reacquired Section 51 from Sabine or
its assigns, that interest would be free and clear of overriding royalty
interests, while noting that Texaco agreed to the creation by BTA of the
overriding royalty interest to his predecessor in title and that Texaco never
reacquired its interest from BTA.  We
fail to see how any of these facts show that Boldrick=s
overriding royalty interest was not subject to the nonconsent penalty
provisions of the joint operating agreement as between him and BTA or that it
is not a Asubsequently
created interest@ as that
term is used in the joint operating agreement. 
He suggests that there are judicial admissions that, when he took title
to his overriding royalty interest, it was subject to the joint operating
agreement, including Paragraph 31(b), except that it would not be a
subsequently created interest in that Chevron/Texaco had consented to the
override. He does not specifically refer us to a judicial admission that his
interest would not be a subsequently created interest, and we are not aware of
any.  We disagree with his contention
that Chevron/Texaco=s consent
to the assignment by BTA of Boldrick=s
overriding royalty interest means that that interest, which was created subsequent
to the 1973 joint operating agreement, was not a subsequently created interest
under the terms of that agreement.  

Boldrick
refers us to indemnity language in Paragraph 31(b) of the joint operating
agreement and to language in Paragraph 13 of that agreement that suggest a
possible liability of BTA to Boldrick. 
We have held that BTA has no current liability to Boldrick for the sums
that would be due from his overriding royalty interest were it not for BTA=s nonconsenting status and have noted
that neither we nor the trial court have made any determination as to whether
BTA has such a liability in the future after all nonconsenting penalties have
been paid and BTA and Boldrick are receiving payments for their respective
interests.  We find that the indemnity
provisions of Paragraph 31(b) and Paragraph 13 are not inconsistent with that
holding.  








Boldrick
urges in point three that the division order relied upon by the trial court did
not apply to the well as to which BTA was a nonconsenting party.  The division order, executed by Boldrick=s predecessor, provides that BTA has no
obligation to disburse funds that it has not received.  Boldrick suggests that the division order did
not apply to the well in question nor did it relate to the same formation.  However, the division order by its terms is
applicable to all wells located in the described area, an area that includes the
well in question.  Even if this division
order was not effective, it would not change our conclusion that, considering
all the documents in question and any other summary judgment evidence, BTA has
no present obligation to pay Boldrick for his overriding royalty interest that
is currently being used as provided by Paragraph 31(b) of the joint operating
agreement.  Boldrick relies upon a
Chevron division order that Chevron contends was a mistake.  For the reason stated, we agree that Chevron=s division order was a mistake.  We disagree with Boldrick=s assertion that BTA, in a capacity as
purchaser or assignee, has any current duty to pay him his overriding royalty.

Boldrick
insists in point four that, even if the interest that BTA relinquished to
Chevron during payout pursuant to Paragraph 12 of the joint operating agreement
includes the overriding royalty interest claimed by him, BTA is not excused
from the specific language of its overriding royalty grant to him.   In point five, he asserts that BTA=s obligation or lack thereof for
drilling or development of the oil and gas leasehold estate is not a
controlling issue of the case.  He argues
these two points together.  

Boldrick
refers us to Paragraph 12 of the joint operating agreement.  That paragraph provides that, when operations
are commenced for the drilling of a well by consenting parties, the
nonconsenting parties relinquish to the consenting parties all of their
interests in the well and share of production until the proceeds equal the
total of the costs and penalties that are provided in the paragraph.  The paragraph notes that proceeds that apply
to the total due before the interests revert back to the nonconsenting party do
not include overriding royalty interests. 
However, as previously noted, Paragraph 31(b) provides that, where those
overriding royalty interests are subsequently created interests as defined,
each is chargeable with a pro rata portion of all costs and expenses as if it
were a working interest.  If there is any
conflict between the two paragraphs, Paragraph 31(b) provides that it is
applicable A[n]otwithstanding
anything herein to the contrary.@  We find nothing in Paragraph 12 that
conflicts with our holding in this case. 


Boldrick
refers us to language in Paragraph 13 of the joint operating agreement stating
that A[e]ach
party shall pay or deliver, or cause to be paid or delivered, all royalties due
the owners of  . . . overriding royalties
. . . as shown by Exhibit A.@  We first note that Paragraph 13 deals with ARIGHT TO TAKE PRODUCTION IN KIND@ and that this case does not involve
the taking of production in kind.  We
also note that Boldrick=s
royalty interest is not included in either the original AExhibit
A@ attached to the joint operating
agreement or the amendment to AExhibit
A@ that was part of the 1977 sublease
transaction.  Again, we note that, in the
event that Paragraph 13 conflicts with Paragraph 31(b), we must give effect to
Paragraph 31(b) because of its language of A[n]otwithstanding
anything herein to the contrary.@  








Boldrick
refers us to certain division order title opinions, which he asserts support
his view that he Awould
always receive payment.@  These opinions, one dated January 1978 and
the other April 1978, showed the percentage to be paid at that time by BTA to
Boldrick=s
predecessor for his overriding royalty interest.  There is nothing that would support Boldrick=s view that he would always receive
payment, even as to a future project for which BTA executed its right, as noted
in the joint operating agreement and in its assignment of the overriding
royalty interest, to be a nonconsenting party to that project.

Boldrick
asserts that the trial court erroneously concluded that BTA owned no interest
and had conveyed its interest back to the operator.  The only citation he gives in support of his
assertion is the 1977 sublease agreement between Sabine and Texaco.  In its opinion letter written to the parties,
the trial court merely noted that, under the operating agreement, the interest
in a producing well of a nonconsenting party is relinquished to the consenting
parties, is accomplished without deeds of conveyance, and reverts upon the
recoupment of penalties attributable to nonconsent.  This expression by the trial court is
consistent with Paragraph 31b of the joint operating agreement.








Boldrick
refers us to a number of cases that he indicates show that for at least some
purposes the nonconsenting owner continues to have an ownership interest
pending payment of expenses and penalty. 
These include United States v. Cocke, 399 F.2d 433 (5th Cir.
1968) (carrying party, not carried party, has right to certain federal income
tax deductions);  Dorsett v. Valence
Operating Co., 111 S.W.3d 224 (Tex. App.CTexarkana
2003), rev=d
on other grounds, 164 S.W.3d 656 (Tex. 2005) (nonconsenting party
relinquishes right to share of production revenue until consenting party
receives designated share of expenses); R.R. Comm=n of Tex. v. Olin Corp., 690 S.W.2d
628 (Tex. App.CAustin), writ
ref=d n.r.e.,
701 S.W.2d 641 (Tex. 1985) (Texas Railroad Commission has authority to order a
nonconsenting party, which has a carried interest pending payment of specified
costs, to plug well where operator lacks the funds to do so).  Whatever interest BTA might continue to have
pending its payment of the costs of development of the well in question and the
penalties provided due to its nonconsenting status, it does not change the fact
that Boldrick=s
interest as the holder of an overriding royalty interest assigned to it by BTA
out of BTA=s
interest is chargeable with a pro rata share of all costs and expenses to be
received by the consenting parties and applied to the costs of production.  In oral argument, Boldrick relied upon the
case of Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d
342 (Tex. 2006).  We find that case to be
distinguishable.  In Seagull, the
court held that one selling one=s
oil and gas working interest remains liable to the operator under the operating
agreement unless released by the operator or the terms of the agreement.  207 S.W.3d at 344.  The court based its ruling on the fact that
the operating agreement did not deal specifically with the issue of an
assignment of a working interest to a third party.  Id.
at 346.  In the case at bar, the
joint operating agreement does have a specific provision that deals with what
happens to an overriding royalty interest created by a nonconsenting party.  We conclude that the trial court did not err
in granting BTA=s motion
for summary judgment and in denying Boldrick=s
motion for summary judgment.  We overrule
Boldrick=s points
one, two, three, four, and five.  

The
judgment is affirmed.

 

 

JOHN
G. HILL

JUSTICE

 

March
22, 2007

Panel
consists of: Wright, C.J.,

McCall,
J., and Hill, J.[1]

 











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.